IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

|   |   |   |
|---|---|---|
| SOUTHEASTERN STUD & COMPONENTS, INC., | : : : : | |
| Plaintiff, | : : | |
| v. | : : | 7:07-cv-077 (HL) |
| AMERICAN EAGLE DESIGN BUILD STUDIOS, LLC, ARCH INSURANCE COMPANY, SRC CONSTRUCTION, INC., | : : : : : : | |
| AND | : : | |
| AMERICAN EAGLE COMMUNITIES, LLC, SALVATORE R. CARABETTA, CEI INVESTMENT CORP., MOODY FAMILY HOUSING LLC, and SHAW INFRASTRUCTURE, INC., | : : : : : : : | |
| Defendants. | : | |

**O R D E R**

**I.   INTRODUCTION**

At issue in this case is the alleged breach of a contract for construction work to be performed at the Moody Air Force Base. The contract called for Plaintiff Southeastern Stud & Components, Inc. ("SES") to construct steel framing houses. SES is a manufacturer of high-quality light gauge steel framing and related components. Plaintiff entered into the contract with Defendant American Eagle Design Build Studios, LLC ("AEDBS"), a subcontractor, to replace an existing sub-subcontractor, correct its deficient work, and complete the project. Plaintiff filed the present action against AEDBS, as well as seven other defendants, seeking relief and damages arising out of the non-payment for work

it had performed pursuant to the contract at issue.

Several motions are currently pending in this case, and this order will dispose of them all: (1) Defendants Salavtore R. Carabetta's; CEI Investment Corporation's; and SRC Construction, Inc.'s Motion to Dismiss Counts Six, Ten, Eleven, and Twelve for Failure to State Claims for Which Relief May be Granted (doc. 79),[1] (2) Defendant American Eagle Design Build Studios, LLC's Motion to Dismiss Plaintiff's Complaint with Prejudice or, in the alternative, Motion to Compel Arbitration (doc. 116), and (3) Defendant American Eagle Communities, LLC's Motion (I) to Dismiss Counts 5, 6, 10, 11, 12 and 13 of the Complaint Pursuant to Rule 12 (b)(6), or, in the alternative, (II) to Stay the Proceeding of Counts 5, 10, 11, 12 and 13 Pending Arbitration (doc. 117). Having considered the parties' briefs and the applicable law, the Court presents its findings below.

## II. BACKGROUND

Plaintiff, Southeastern Stud & Components, Inc. (SES) filed its Amended Complaint (doc. 74) against American Eagle Design Build Studios, LLC (AEDBS), Arch Insurance Company (Arch), SRC Construction, Inc. (SRC), American Eagle Communities, LLC (American Eagle), Salvatore R. Carabetta (Carabetta), CEI Investment Corp. (CEI), Moody Family Housing LLC (Moody Family Housing), and Shaw Infrastructure, Inc. (Shaw Infrastructure) seeking: (1) declaratory judgment on a contract between SES and AEBDS for labor and materials provided by SES for a project commonly known as the Moody Air Force base project (project) located in Valdosta, Georgia; (2) declaratory judgment on a bond issued by Arch related to the aforementioned contract; and (3) foreclosure of mechanic's lien. Plaintiff alleges: breach of contract; violation of the Miller Act; quantum meruit;

---

[1] Salvatore Carabetta and CEI Investment Corporation were both dismissed from the instant action by this Court for lack of personal jurisdiction in an Order (doc. 124) dated May 28, 2008. SRC Construction, Inc., remains a named Defendant.

2

fraudulent inducement; common business purpose and single business enterprise; and grounds for piercing the corporate veil. All of SES's claims arise out of its contract with AEDBS and an outstanding balance alleged to be owed by AEDBS for labor and materials provided by SES in relation to the project.

## III. MOTION TO DISMISS STANDARD

AEDBS moves this Court, in part, for a dismissal Plaintiff's Complaint, relying on a provision of Rule 12, which provides in part:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted . . . .

Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) dismissal is a tool available for defendants to challenge the merits of a cause of action for failure to state a claim upon which relief can be granted. When a defendant seeks the dismissal of a claim pursuant to Rule 12(b)(6), the court must accept as true the facts pleaded in the complaint. Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1057 (11th Cir. 2007) (noting that circuit courts "are guided by the same principles of review as the district court" for purposes of a 12(b)(6) motion). The complaint should be construed liberally and in the light most favorable to the plaintiff; all reasonable inferences derived from the complaint should be interpreted to benefit the non-movant plaintiff. Glover v. Liggett Group, Inc., 459 F.3d 1304, 1307 (11th Cir. 2006); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).

The Federal Rules of Civil Procedure governing what must be presented in a complaint require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The standard for what is necessary to satisfy the pleading requirement was

recently modified by the Supreme Court in Bell Atlantic v. Twombly, 127 S. Ct. 1955 (2007), rendering the longstanding Conley standard obsolete.² The United States Court of Appeals for the Eleventh Circuit recently interpreted the Twombly pleading standard: "In order for the plaintiff to satisfy his 'obligation to provide the grounds of his entitlement to relief,' he must allege more than 'labels and conclusions'; his complaint must include '[f]actual allegations [adequate] to raise a right to relief above the speculative level.'" Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282 (11th Cir. 2007) (citing Twombly, 127 S.Ct. at 1964-65.). In light of the abrogation of fifty-year-old precedent, the Supreme Court reassured litigants that Rule 8 does not now require a "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974.

## IV. DISCUSSION

Three separate Defendants have motions pending before the Court, and this Order will address them all in turn.

### A. AEDBS's Motion to Dismiss

AEDBS moves this Court to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted, or, in the alternative, to compel SES's claims to binding arbitration. In support of the dismissal relief sought, AEDBS cites the Limitation of Liability provision of the contract for the proposition that most of SES's claims are barred. The exculpatory clause states in pertinent part:

---

² Indeed, the venerable Conley standard–articulated in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), for the proposition that a motion to dismiss a plaintiff's complaint, or a portion thereof, under Rule 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"–stood as the standard for fifty years.

4

> In no event shall CONTRACTOR, CLIENT, CONTRACTOR's insurers, directors, officers, affiliates, parent companies, or employees be liable for any incidental, indirect, impact or consequential damages, or in the cumulative aggregate, for any damages in excess of the compensation to be paid by CONTRACTOR under a [PURCHASING ORDER] involved or such minimum amount as is permitted by law, if any.

(Ex. A, doc. 116-3, at § 10.)

SES challenges the application of the clause, but seemingly only with respect to its fraudulent inducement claim. It is unclear to the Court whether SES is disputing the clause's application to all of its claims or only the fraudulent inducement one. Nevertheless, "[a]bsent a countervailing public policy interest, parties are free to contract to waive rights, including the right to recourse in the event of breach by the other party." Worker's Comp. Legal Clinic of La. v. Bellsouth Telcoms., 374 F. Supp. 2d 1215, 1218 (N.D. Ga. 2005); see also Flanigan v. Executive Office Ctrs., Inc., 546 S.E.2d 559, 561 (Ga. Ct. App. 2001); Imaging Sys. Int'l. Inc. v. Magnetic Resonance Plus, Inc., 490 S.E.2d 124, 127-28 (Ga. Ct. App. 1997). Notwithstanding the Northern District's proposition that seems to support AEDBS's position, the arbitration clause and its enforceability is a threshold issue that the Court will address first.

AEDBS argues in the alternative that this Court is not the proper venue to resolve this dispute which centers on the breach of the contract. Instead, AEDBS contends that a binding arbitration agreement exists between the parties, and should this Court choose not to dispose of any of SES's claims on the merits, then any and all extant claims should be resolved through arbitration. The enforceability of an arbitration clause is governed by the FAA, which states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing

5

controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Courts construing the Federal Arbitration Act ("FAA") have concluded that it was intended "to reverse longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). Similarly, courts have "rejected generalized attacks on arbitration that rest on 'suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants.'" Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 89-90 (2000) (quoting Rodrigues de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 481 (1989)). "The FAA makes enforceable a written arbitration provision in 'a contract evidencing a transaction involving commerce.'" Jenkins v. First Am. Cash Advance of Ga., LLC, 400 F.3d 868, 874 (11th Cir. 2005) (quoting 9 U.S.C. § 2).

Here, AEDBS contends that the FAA mandates the enforcement of the arbitration clause where the provision was indeed written and included in the contract at issue, the steel construction work to be done concerned SES, an out-of-state contractor, and the all of SES's claims arose as a result of the contractual relationship. The arbitration clause at issue here states in pertinent part:

> Any dispute between the SUB and CONTRACTOR arising out of this Agreement or breach thereof, but not involving the CLIENT or Client Contract Provisions, may, at the option of CONTRACTOR, be submitted to arbitration in accordance with the Construction Industry Rules of the American Arbitration Association in the place where THE WORK is being performed.

(Ex. A, doc. 116-3, at § 26.)

Plaintiff presents three arguments challenging the compulsion of arbitration in this case. First, SES contends that AEDBS has waived its right to arbitrate this case. Second, SES argues

that the arbitration clause included in the contract at issue is unenforceable under principles of contract law. Finally, SES reasons that the arbitration clause as written is inapplicable to the dispute in this case.

"[D]espite the strong policy in favor of arbitration, a party may, by its conduct, waive its right to arbitration." S & H Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507, 1514 (11th Cir. 1990). In determining whether AEDBS has waived its right to arbitrate, the Court looks to a test articulated by the United States Court of Appeals for the Eleventh Circuit: "First, we decide if, 'under the totality of the circumstances,' the party 'has acted inconsistently with the arbitration right,' and, second, we look to see whether, by doing so, that party 'has in some way prejudiced the other party.'" Ivax Corp. v. B. Braun of Am., 286 F.3d 1309, 1315-16 (11th Cir. 2002) (citations omitted). Acting inconsistently with the arbitration right has been defined by federal courts as substantially invoking the litigation machinery prior to demanding arbitration. See, e.g., Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222 (11th Cir. 2000); Morewitz v. West England Ship Owners Mut. Protection & Indem. Assoc., 62 F.3d 1356, 1366 (11th Cir.1995); Stone v. E.F. Hutton & Co., 898 F.2d 1542, 1543 (11th Cir. 1990); Miller Brewing Co. v. Fort Worth Distributing Co., 781 F.2d 494, 497 (5th Cir. 1986).

Plaintiff avers that AEDBS's filing of a motion to dismiss is an overt act that demonstrates a desire to litigate this case rather than arbitrate it: "By filing its Rule 12(b)(6) Motion first, AEDBS made its election–to proceed with litigation–and in doing so it waived its right to seek arbitration." (Pl's. Resp., doc. 120, at 9.) Further, Plaintiff claims that it is prejudiced by AEDBS's delay of more than seven months in seeking to compel arbitration. Specifically, Plaintiff posits that the inability to obtain a resolution of its claims as well as the time and money spent on

7

litigation and discovery resulted in it being prejudiced as contemplated by the jurisprudence on arbitration rights waiver.

AEDBS relies heavily on persuasive authority to support its claim that it has not waived its right to arbitrate. AEDBS cites a Second Circuit opinion for the proposition that, "by eliminating some of the claims as a matter of law the role of the arbitrator might be made more simple, because the arbitrator would then be able to concentrate or focus solely on claims that have facial merit." Sweater Bee by Banff, Ltd. v. Manhattan Industries, Inc., 754 F.2d 457, 465 (2d Cir. N.Y. 1985) (holding that arbitration rights not waived where motion to dismiss was filed previously). The Court agrees with AEDBS and the Second Circuit. Here, it can be said a fortiori that AEDBS did not substantially participate in litigation where its motion to compel arbitration was filed concurrently (as opposed to subsequently) with its dismissal motion. With respect to any prejudice incurred by Plaintiff, the Court fails to recognize at the time AEDBS's motion was filed any dilatory tactics by AEDBS nor any unnecessary expenses suffered by SES. AEDBS did not waive its right to arbitrate.

The Court can dispose of Plaintiff's remaining two challenges to arbitration quickly. First, Plaintiff contends that the arbitration clause is unenforceable: "Only where both parties are equally bound to arbitrate the covered claims is there an enforceable arbitration clause." (Pl's. Resp., doc. 120, at 11.) Specifically, Plaintiff objects to the language of the arbitration clause that grants AEDBS the option to arbitrate. In support of its position, Plaintiff cites a Georgia Court of Appeals case, "It is clear that the dispute over Rushing's promissory note must be arbitrated under the existing By-Laws and arbitration policy, and nothing in either document permits the parties to unilaterally decline arbitration." Rushing v. Gold Kist, 567 S.E.2d 384, 388 (Ga. Ct. App. 2002).

8

However, the Georgia Court of Appeals never goes so far as to say that had one of the parties been able to unilaterally decline arbitration, the clause itself would be invalidated. Plaintiff's position on the enforceability of the arbitration clause is wrong. The undersigned concurs with the Northern District of Georgia case cited by AEDBS in its reply brief: "[W]here the agreement to arbitrate is integrated into a larger unitary contract, the consideration for the contract as a whole covers the arbitration clause as well." W.L. Jorden & Co. v. Blythe Indus., Inc., 702 F. Supp. 282, 284 (N.D. Ga. 1988). Accordingly, the Court disagrees with Plaintiff's contention that the arbitration clause is unenforceable.

Finally, Plaintiff argues that the arbitration clause, even if enforceable, is nonetheless inapplicable because the clause expressly proscribes arbitration for disputes involving SRC Construction, Inc., another named Defendant in SES's Complaint. Plaintiff contends that the dispute involves SRC because SRC has been named in the suit for its actions surrounding the construction work contemplated by the contract at issue. The Court disagrees with Plaintiff's characterization of the dispute in this case. SES and AEDBS entered into a valid contract with a valid arbitration clause. Here, SES is attempting an end run around the clause by referencing SRC's involvement in the case. However, SRC was not a party to the contract, and since SES's claims arose out of the alleged breach of said contract, the Court will not allow SES to escape the coverage of the arbitration clause simply by naming SRC as a party. The arbitration clause included in the contract at issue applies to the claims presented by SES.

The right to arbitration having been found not waived, and the clause itself having been determined enforceable and applicable to the claims present in the instant action, the Court concludes that AEDBS's motion to compel arbitration should be granted. The case as to AEDBS

9

will be stayed pending the outcome of the arbitration.

      **B.**      **AEC's Motion to Dismiss**

AEC moves this Court to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted, or, in the alternative, for a stay pending the outcome of arbitration of the AEDBS claims, should the Court so compel. AEC proceeds pursuant to Rule 12(b)(6) and presents two separate arguments in support of the dismissal of the claims lodged against it. First, AEC argues that SES's fraud claim cannot lie where, as here, it is based on a breach of contract or an unenforceable promise. Second, AEC avers that the remaining claims it faces are all founded on the theory that it is the alter ego of AEDBS, but that such claims should fail were SES did not allege AEDBS's insolvency.

Count VI of SES's Complaint is a fraudulent inducement claim lodged against all seven Defendants in the case. Specifically, SES accuses Tom Swain, the alleged representative authorized to bind all Defendants of making false assurances of the ability to pay on which SES relied, subsequently continuing to work when there were no funds to remunerate it.

The fraudulent inducement cause of action is established using the same elements as fraud. See, e.g., Johnson v. Univ. Health Servs., 161 F.3d 1334, 1341 (11th Cir.1998) (analyzing fraudulent inducement under fraud framework); Velten v. Lippert, 985 F.2d 1515, 1524 (11th Cir. 1993) (same). In Georgia, the requisite elements for a fraud claim are: (1) false representation by defendant; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff. See, e.g., Next Century Communs. Corp. v. Ellis, 318 F.3d 1023, 1027 (11th Cir. 2003); Ades v. Werther, 567 S.E.2d 340, 343 (Ga. Ct. App. 2002).

When pleading a fraud case in federal court, plaintiffs must satisfy the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b).[3] Here, AEC does not challenge SES's pleading, instead calling into question whether SES even has a cause of action. AEC argues that "the alleged promise made on behalf of [AEC] (which was not a party to the Contract) to pay money owed by AEDBS to Plaintiff, even if true (which [AEC]] denies), constitutes an unenforceable promise void under the Statute of Frauds, in that it represents a gratuitous promise unsupported by consideration and mutuality, and thus cannot provide the basis for a fraud claim," and it provided authority to support the proposition. (Mot. to Dismiss, doc. 117-2, at 6.) SES opposed AEC's position but provided no authority. The Court agrees with AEC. "Georgia law is clear that 'fraud cannot be predicated upon statements which are promissory in their nature as to future acts.'" Adkins v. Cagle Foods JV, L.L.C., 411 F.3d 1320, 1326 (11th Cir. 2005) (citing Warner v. Jeter, 153 S.E.2d 626, 627 (Ga. Ct. App. 1967)). The law on fraud in Georgia is well settled:

> The general rule is that actionable fraud cannot be predicated upon promises to perform some act in the future. Jackson v. Brown, 209 Ga. 78(2), 70 S.E.2d 756 (1952); Beach v. Fleming, 214 Ga. 303, 104 S.E.2d 427 (1958). Nor does actionable fraud result from a mere failure to perform promises made. Pantone v. Pantone, 203 Ga. 347, 46 S.E.2d 498 (1948). "[o]therwise any breach of a contract would amount to fraud." Ga. Real Estate Comm. v. James, 152 Ga.App. 193, 195, 262 S.E.2d 531 (1979).

Lively v. Garnick, 287 S.E.2d 553, 557 (Ga. Ct. App. 1981).

Here, SES alleges that it was assured by representatives of AEC that it would be paid

---

[3] In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b).

according to the terms of the contract, and, relying on these assurances, it continued to working for another two months. The assurances that SES allegedly relied on are nothing more than unenforceable promises to perform a future act. Accordingly, AEC's motion to dismiss is granted with respect to SES's fraudulent inducement claim.

AEC seeks the dismissal of the remaining claims it faces not on their merits, but because: "Plaintiff does not allege or establish that AEDBS is insolvent and incapable of satisfying any judgment as to AEDBS' liability, which is a necessary condition to any alter ego/veil piercing claim." (Mot. to Dismiss, doc. 117-2, at 12.) Considering SES's allegation that representatives of AEC claimed that there was no funding to pay for the work already done, and that all of the claims rely on whether AEDBS is found to be liable, the Court denies AEC's motion to dismiss with respect to the remainder of SES's claims.

C. **SRC's Motion to Dismiss**

SRC moves this Court to dismiss SES's claims pursuant to Rule 12(b). Specifically, SRC seeks the dismissal of Counts VI, X, XI, and XII of the Amended Complaint. In Count X, SES sets forth a "common business purpose/single business enterprise" claim against all the named Defendants, including SRC. SES contends these Defendants "integrated their resources to achieve a common business purpose" relating to the construction project. (Amended Compl., doc 74, ¶ 88.) In its Complaint, SES further states: "Under the doctrine of single business enterprise and common business purpose, Defendants American Eagle, Carabetta, CEI, Shaw Infrastructure, SRC and Moody Family Housing are liable to [SES] for the actions of [AEDBS]. (Id. at ¶ 88.) In Count XII, SES seeks to recover attorneys' fees and expenses from all Defendants.

In moving for dismissal, SRC argues that SES's allegations in Count X amount to an

improper "single business enterprise" theory and that Georgia law does not recognize a "single business enterprise" cause of action. With respect to Count XII, SRC argues that SES has failed to allege any statutory or contractual provision that would allow it to circumvent the "American Rule" and recover attorneys' fees against it. In opposing dismissal, SES argues that Count X and XI set forth "an alter ego/pierce the corporate veil claim against Shaw." (Pl.'s Resp. at 2.) With respect to the issue of attorneys' fees, Southeastern contends that it is authorized to pursue them under O.C.G.A. § 13-6-11, because they are based on a breach of contract and there is evidence of bad faith.

As an initial matter, and contrary to SRC's assertions, it does not appear to the Court that recovery under the "single business enterprise" theory is foreclosed in Georgia. As SES points out, the Court of Appeals of Georgia appears to endorse the common business enterprise theory in Mark Six Realty Assoc., Inc. v. Drake, 463 S.E.2d 917 (Ga. Ct. App. 1996). In a footnote, the court stated:

> [W]here evidence exists that the corporation has no employees, does no business, uses no name, and is a shell created for a very specific and limited purpose to benefit another corporation, we must look to the activities of that other corporation to determine whether the corporations were engaged in a common business enterprise.

Id. at 921 n.2. In Mark Six Realty, the court cited to its earlier decision in Fort & Turner Enter., Inc. v. Scrocca, 394 S.E.2d 364 (Ga. Ct. App. 1990). In Fort & Turner, the court held that three entities could be held liable for damages, even though the party seeking damages dealt only with one of the companies. The court explained that the evidence was sufficient to allow the three to be held jointly liable "under the theory that they were joint participants in a common business

13

enterprise." Id. at 366.

In neither of these cases does the court explicitly define the parameters of a "single business enterprise" theory of recovery in Georgia, but both cases suggest that such a theory might be viable. In light of the language contained in these cases, and given that SES's burden at the pleading stage is not onerous, this Court cannot say that Counts X and XI fail to state a claim upon which relief can be granted.

Insofar as SRC seeks dismissal of SES's claim for attorneys' fees, the Court agrees that no statutory or contractual basis for the claim is set forth in the Complaint. In opposing dismissal, however, SES asserts that its claim for attorneys' fees is based on O.C.G.A. § 13-6-11, which allows for the recovery of attorneys' fees in contract actions, where the defendant has acted in bad faith, been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. O.C.G.A. § 13-6-11 (2007). That Code section further provides, however, that expenses of litigation may be allowed "where the plaintiff has specially pleaded and has made prayer therefor." Id. Here, SES has set forth a claim for attorneys' fees but has not pleaded § 13-6-11 as the basis for its claim. Moreover, SES has not explained in any detail what conduct, by which Defendants, would entitle them to recover under this Code section. In these respects SES's claim under Count XII is deficient. Earlier in the litigation of this case, the Court was of the opinion that SES should be allowed to amend to remedy the deficiencies. However, after being invited to do so in an Order (doc. 73) dated December 17, 2007, SES has failed to include the necessary language in its Complaint. As a result, SRC's motion to dismiss is granted with respect to Count XII of the Complaint. Additionally, for the reasons discussed above concerning AEC's Motion to Dismiss, SRC's motion to dismiss with respect to Count VI of the Complaint, alleging fraudulent

14

inducement.

**V.    CONCLUSION**

Accordingly, Defendant American Eagle Design Build Studios, LLC's Motion to Dismiss Plaintiff's Complaint with Prejudice or, in the alternative, Motion to Compel Arbitration (doc. 116) is GRANTED IN PART and DENIED IN PART.  Specifically, AEDBS's motion is granted so far as the Court compels SES to arbitrate the claims pending against AEDBS.  Defendant American Eagle Communities, LLC's Motion (I) to Dismiss Counts 5, 6, 10, 11, 12 and 13 of the Complaint Pursuant to Rule 12 (b)(6), or, in the alternative, (II) to Stay the Proceeding of Counts 5, 10, 11, 12 and 13 Pending Arbitration (doc. 117) is  GRANTED IN PART and DENIED IN PART.  Specifically, AEC's motion is granted to the extent that Count VI alleging fraudulent inducement has been dismissed. Defendants Salavtore R. Carabetta's; CEI Investment Corporation's; and SRC Construction, Inc.'s Motion to Dismiss Counts Six, Ten, Eleven, and Twelve for Failure to State Claims for Which Relief May be Granted (doc. 79)  GRANTED IN PART and DENIED IN PART.  Specifically, SRC's motion is granted to the extent that Count VI alleging fraudulent inducement and Count XII seeking attorneys' fees have been dismissed.    This case shall be stayed pending the outcome of the arbitration.

SO ORDERED, this 30th day of July, 2008.

>         /s/ *Hugh Lawson*
> HUGH LAWSON, CHIEF JUDGE
> UNITED STATES DISTRICT COURT

HL/cbb